**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DANIEL KARON**, individually and on behalf of all others similarly situated, | Case No. : |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| **CNU ONLINE HOLDINGS, LLC, d/b/a CASHNETUSA**, a Delaware limited liability company, and **JOHN DOE CORPORATION**, | |
| *Defendants*. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Daniel Karon ("Karon" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant CNU Online Holdings LLC d/b/a CashNetUSA ("CashNet") and John Doe Corporation ("John Doe Corporation" and together with CashNet, "Defendants") to: (1) stop their practice of placing calls using "an artificial or prerecorded voice" to the telephones of consumers nationwide without their prior express written consent; and (2) obtain redress for all persons injured by their conduct. Plaintiff Karon, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1.      Plaintiff Daniel Karon is a natural person and resident of Cuyahoga County, Ohio.

2.      Defendant CashNet is a limited liability company organized and existing under the laws of the State of Delaware.[1] CashNet systemically and continuously conducts business throughout this District, the State of Illinois, and the United States. CashNet is registered to do business in Illinois with the Secretary of State and maintains its corporate offices at 175 W. Jackson Blvd., Suite 1000, Chicago, Illinois 60604, within this District. CashNet can be served through its registered agent, C T Corporation System, located at 208 South Lasalle Street, Suite 814, Chicago, Illinois 60604.

3.      John Doe Corporation is a vendor of CashNet that did not identify itself. The true identity of John Doe Corporation will be revealed during discovery and Plaintiff will amend, or seek leave to amend, the Complaint at that time.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), which is a federal statute.

5.      This Court has personal jurisdiction over Defendants because Defendants maintain their corporate headquarters in this District, solicit significant consumer business in this District, CashNet has entered into contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, and/or was directed, from this District.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b) because CashNet conducts a significant amount of business within this District and because the wrongful conduct

---

[1] CashNet is a wholly owned subsidiary of Enova International, Inc. ("Enova"), a publicly traded company. Enova was spun out from another publicly traded company, Cash America International, Inc., in November 2014.

giving rise to this case occurred in, and/or was directed from, this District. Venue is additionally proper because Defendant resides in this District.

## COMMON ALLEGATIONS OF FACT

7.      CashNet is a state-licensed online lender that offers payday loans, installment loans and line of credit products to consumers.

8.      In recent years, payday lenders such as CashNet have turned to unsolicited telemarketing as a way to increase its customer base. Widespread telemarketing is a primary method by which CashNet solicits new customers.

9.      John Doe Corporation initiated a prerecorded telemarketing call to the cellular telephone numbers of Plaintiff and the Class to promote CashNet in violation of the TCPA. CashNet hired John Doe Corporation to originate new customers and is vicariously liable for its illegal telemarketing conduct.

10.     The TCPA prohibits companies, such as CashNet, from placing calls using an artificial or prerecorded voice ("prerecorded calls") when making calls to cellular telephones without first obtaining consent.

11.     CashNet has violated, and continues to violate, the TCPA and its implementing regulations by placing, or having placed on its behalf, prerecorded calls to cellular telephone subscribers (a) who have not expressly consented to receiving such calls and/or (b) who have expressly requested ***not*** to receive such calls.

12.     As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers…. Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the

health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.[2]

13.     Senator Larry Pressler, one of the original drafters of the TCPA, explained the need for the TCPA by observing that "[u]nlike other communications media, the telephone commands our instan[t] attention. Junk mail can be thrown away. Television commercials can be turned off. The telephone demands to be answered." 137 Cong. Rec. S18785 (daily ed. Nov. 27, 1991) (statement of Sen. Pressler).

14.     As explained by the Federal Communications Commission ("FCC")[3], the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

15.     Yet, in violation of this rule, Defendants fail to obtain any prior express written consent to place prerecorded calls to consumers' cellular telephone numbers.

16.     In response to the liability risk associated with the TCPA, numerous commercially available services exist to help companies, such as Defendants, that call others using prerecorded voices, identify cellular subscribers and otherwise ensure that calls are only made to consenting consumers. For instance, companies such as Infutor, Nextmark List, and Contact Center Compliance advertise their ability to instantly identify and flag cellular telephone numbers from calling lists on a recurring basis (such as weekly or monthly). This type of service

---

[2] Pub. L. No. 102-243 § 2(6, 12) (1991), codified at 47 U.S.C. § 227.
[3] The FCC is the federal agency given the administrative authority to interpret and enforce the TCPA. 47 U.S.C. § 227(b)(2).

can even identify disconnected numbers before they are recycled, thereby alerting mobile marketers that any consent associated with those telephone numbers has been terminated.

17.     Despite the FCC's ruling, the industry guidelines, and the commercial availability of programs that help callers filter out non-consenting numbers, Defendants fail to take the necessary steps to ensure that their prerecorded calls are placed only to consenting recipients.

18.     Rather, in an effort to increase revenue and skirt additional costs, Defendants simply ignore the law when contacting individuals via prerecorded calls to their cellular telephones.

19.     Defendants know or should know that their prerecorded calls are placed to non-consenting cellular telephone subscribers. Ultimately, Defendants are responsible for verifying telephone number ownership and obtaining consent before placing prerecorded calls to cellular telephone subscribers.

20.     Defendants were, and are, aware that their unsolicited prerecorded calls were, and are, unauthorized as they fail to obtain prior express written consent before placing those calls to consumers. Ultimately, consumers are forced to bear the costs of receiving these unsolicited prerecorded calls.

21.     Telemarketers can easily and inexpensively avoid calling consumers who are registered on the National Do Not Call Registry by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers whom opt-out of telemarketing calls.

22.     To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

23.     There are numerous third-party services that will additionally scrub the call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[4] Indeed, one service notes that they can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[5]

24.     By placing the unsolicited prerecorded calls at issue in this Complaint, Defendants caused Plaintiff and the other members of the Class actual harm and cognizable legal injury. This includes the aggravation, nuisance, and invasions of privacy that result from the sending and receipt of such prerecorded calls, a loss of value realized for the monies consumers paid to their carriers for the receipt of such prerecorded calls, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

25.     In response to Defendants' unlawful conduct, Plaintiff filed this action seeking (a) an injunction requiring Defendants to cease all unsolicited prerecorded calling activities and, (b) an award of actual or statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

---

[4] *See e.g.* http://www.dncsolution.com/do-not-call.asp; http://www.donotcallprotection.com/do-not-call-compliance-solutions-1; http://www.mindwav.com/tcpa_compliance_solution.asp;
[5] https://www.neustar.biz/services/tcpa-compliance

## FACTS SPECIFIC TO PLAINTIFF DANIEL KARON

26.     Plaintiff Karon is the registered account owner and regular user of a cellular telephone number 216-xxx-2594.

27.     The 216-xxx-2594 number has been registered on the National Do Not Call Registry since October 15, 2007.

28.     On October 1, 2018 at 4:35 pm, Plaintiff received an unsolicited, pre-recorded phone call on his cellular telephone from 773-869-0748.

29.     The October 1, 2018 call used a pre-recorded voice and stated that they were calling regarding a cash advance loan offered by CashNet and urged Plaintiff to call 773-869-0748.

30.     Plaintiff returned the October 1, 2018 call solely to determine who the caller was and was connected with one of John Doe Corporation's telephone representatives.

31.     John Doe Corporation's phone representative asked Plaintiff why he wanted a cash advance and stated that Plaintiff was pre-approved for $3,000 and that Defendant CashNet would be the lender.

32.     Plaintiff has never provided prior express written consent to Defendants to receive prerecorded calls to him on the 216-xxx-2594 number.

33.     Defendants failed to obtain prior express written consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

34.     By placing the prerecorded calls as alleged herein, Defendants have caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the prerecorded call disturbed Plaintiff's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone.

35.     In order to redress these injuries, Plaintiff, on behalf of himself and the other members of the Class, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded calls to cellular telephones.

36.     On behalf of the Class, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited pre-recorded calling activities and an award of actual or statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CASHNET'S LIABILITY FOR TELEMARKETING CALLS

37.     CashNet is a "person," as defined by 47 U.S.C. § 153(39).

38.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. § 227(b)(2).

39.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

40.     In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, FCC 07-232, Declaratory Ruling, ¶ 10 (Jan. 4,

2008) (specifically recognizing "on behalf of" liability in the context of an autodialed or

prerecorded message call sent to a consumer by a third party on another entity's behalf under 47

U.S.C. § 227(b)).

41.　　On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling

holding that sellers such as CashNet may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing
> activities to unsupervised third parties would leave consumers in many cases
> without an effective remedy for telemarketing intrusions. This would particularly
> be so if the telemarketers were judgment proof, unidentifiable, or located outside
> the United States, as is often the case. Even where third-party telemarketers are
> identifiable, solvent, and amenable to judgment limiting liability to the
> telemarketer that physically places the call would make enforcement in many
> cases substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately in order
> to obtain effective relief. As the FTC noted, because "[s]ellers may have
> thousands of 'independent' marketers, suing one or a few of them is unlikely to
> make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ("May 2013
FCC Ruling") (internal citations omitted).

42.　　More specifically, the May 2013 FCC Ruling held that, even in the absence of

evidence of a formal contractual relationship between the seller and the telemarketer, a seller is

liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make

the calls. *Id.* at 6586 (¶ 34).

43.　　The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including

the assertion that a seller's liability requires a finding of formal agency and immediate direction

and control over the third-party who placed the telemarketing call. *Id.* at 6587 n.107.

44.　　The May 2013 FCC Ruling further clarifies the circumstances under which a

telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the
> outside sales entity access to information and systems that normally would be

within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592 (¶ 46)

45.     CashNet is legally responsible for ensuring that the company that made the calls complied with the TCPA, even if CashNet did not itself make the calls.

46.     CashNet knowingly and actively accepted business that originated through the illegal telemarketing calls from the company that made the calls.

47.     In fact, CashNet accepted the business from illegal calls from the John Doe Corporation Defendant, even though it had previously received complaints alleging that the third parties working on its behalf were violating the TCPA.

48.     Despite these facts, CashNet has continued to fail to monitor the third parties operating on its behalf.

49.     By hiring a company to make calls on its behalf, CashNet "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

50.     Moreover, CashNet maintained interim control over the actions of the party that made the calls.

51.     For example, CashNet had absolute control over whether, and under what circumstances, it would accept a customer.

52.     Furthermore, CashNet had day-to-day control over the actions of the calling party, including the ability to prohibit it from using a pre-recorded message to contact potential customers of CashNet.

53.     Additionally, CashNet restricted the geographic location of the calls made by the company promoting CashNet.

54.     CashNet also gave interim instructions to the company that made the calls by providing the volume of calling and contracts it would purchase.

55.     Moreover, CashNet instructed the calling party to transfer potential customers over to a third-party verification company that CashNet had hired to complete the sign-up process.

56.     In other words, CashNet allows its vendors to bind CashNet in contract following an illegal telemarketing call, such as the one Plaintiff received.

57.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ALLEGATIONS

58.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

**Robocall Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Defendants (or a third person acting on behalf of Defendants) called; (2) on the person's cellular telephone number using an artificial or prerecorded voice.

59. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest, and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the need to amend the definition of the Class following class discovery, including discovery revealing the manner by which Defendants claim they obtained prior express consent to place autodialed and/or pre-recorded calls to the Plaintiff.

60. **Numerosity**: The exact number of members within the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have placed unsolicited calls to hundreds or thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

61. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and the members of the Class sustained damages arising out of Defendants' uniform wrongful conduct, namely their unauthorized telemarketing calls. Plaintiff is a member of the Class defined herein, and if Plaintiff is able to recover for the claims set forth in this Complaint, then the other members of the Class will have a right to recover as well.

12

62.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions, including class actions under the TCPA and related statutes. Plaintiff has no conflicts with, or interests antagonistic to, those of the Class, and Defendants have no defenses unique to Plaintiff.

63.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a)  Whether CashNet is liable for the conduct of their third-party vendor;

b)  Whether John Doe Corporation made calls with a prerecorded message;

c)  Whether Defendants' conduct constitutes a violation of the TCPA;

d)  Whether Defendants utilized an artificial or prerecorded voice to place calls to members of the Class;

e)  Whether members of the Class are entitled to statutory and treble damages based on the willfulness of Defendants' conduct;

f)  Whether Defendants obtained prior express consent to contact any class members;

g)  Whether Defendants' calls constitute telemarketing or were dual purpose messages; and

h)  To the extent Defendants' conduct does not constitute telemarketing, whether Defendants obtained prior express oral consent to contact any class members.

64.     **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the

individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action. Individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

65.     Adequate notice can be given to the members of the Class directly using information maintained in Defendants' records or through notice by publication.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Robocall Class)**

66.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

67.     Defendants and/or their agents placed unsolicited calls to cellular telephone numbers belonging to Plaintiff and the other members of the Robocall Class.

68.     These calls were made without the prior express written consent of the Plaintiff and the other members of the Robocall Class to receive such calls.

69.     These calls, including those to Plaintiff, utilized an artificial or prerecorded voice.

70.     To the extent prior written express consent was required, Defendants failed to obtain prior written express consent that disclosed to the consumer that agreeing to receive pre-

14

recorded calls was not a condition of purchase or use of any goods or service. Neither was oral consent provided.

71. To the extent CashNet's agent, John Doe Corporation, placed the calls at issue, CashNet's agent acted with actual or apparent authority and/or in accordance with a contract between CashNet and its agent, John Doe Corporation. CashNet's agent acted under CashNet's control and for CashNet's benefit and/or with CashNet's knowledge and approval. CashNet controlled its agent and knew about, and received the benefits of, the agent's calling activities. CashNet ratified the agent's conduct with respect to the placing of such calls.

72. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff and the other members of the Robocall Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

73. In the event that the Court determines that Defendants' conduct was willfull and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Robocall Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Daniel Karon, individually and on behalf of the Class, prays for the following relief:

1. An order certifying this case as a class action on behalf of the Class as defined above; appointing Karon as the representative of the Class and appointing his attorneys as Class Counsel;

2. An award of actual and statutory damages to be paid into a common fund for the benefit of Plaintiff and the Class;

3.      An order declaring that Defendants' actions, as set out above, violate the TCPA;

4.      An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

5.      An order requiring Defendants to identify any third-party involved in the prerecorded calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

6.      An injunction requiring Defendants to cease all unsolicited prerecorded calling activities, and otherwise protecting the interests of the Class;

7.      An injunction prohibiting Defendants from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

8.      An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

9.      Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated: November 5, 2018                   */s/ Katrina Carroll*
                                          Katrina Carroll
                                          **LITE DEPALMA GREENBERG LLC**
                                          111 W. Washington Street, Suite 1240
                                          Chicago, IL 60602
                                          Telephone (312) 750-1265
                                          Facsimile: (312) 212-5919
                                          kcarroll@litedepalma.com

                                          Adam T. Savett (73387)
                                          **SAVETT LAW OFFICES LLC**
                                          2764 Carole Lane
                                          Allentown PA 18104
                                          Telephone: (610) 621-4550
                                          Facsimile: (610) 978-2970
                                          adam@savettlaw.com

                                          *Attorneys for Plaintiff and the Putative Class*