**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL KARON, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18 C 7360 |
| | ) | |
| CNU ONLINE HOLDINGS, LLC, d/b/a/ | ) | Judge Joan H. Lefkow |
| CASHNETUSA, a Delaware limited liability | ) | |
| company, and JOHN DOE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

The motions of CNU Online Holdings, LLC's (CNU) to dismiss and strike class allegations (dkt. 19) and for sanctions (dkt. 30) are denied. Karon's motion to strike the motion for sanctions and for counter-sanctions (dkt. 32 at 14–15) is denied. See statement.[1]

**STATEMENT**

**I.      Background**

In 2018, Karon, an Ohio resident, received an unsolicited, prerecorded call to his cell phone encouraging him to call a phone number to obtain a cash advance loan from CNU. (Dkt. 1 ¶¶ 1–2, 28–29.) When Karon dialed the number solely to determine the caller's identity, a representative of John Doe Corporation (John Doe) answered and informed Karon that he had been preapproved for a $3,000 loan from CNU. (*Id.* ¶¶ 30–31.) Karon had never given consent for CNU or its affiliates to call him. (*Id.* ¶¶ 32–33.)

Karon filed a single-count complaint alleging a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA), individually and on behalf of a putative class of anyone who received an unsolicited call from or on behalf of CNU using a prerecorded or automated voice. (*Id.* ¶ 58.) Karon alleges that CNU is responsible for John Doe's call because John Doe was CNU's agent. In support, Karon alleges that CNU exercised significant control over John Doe's activities, including (1) limiting the geographical areas to which John Doe could place calls, (2) restricting John Doe's contract and call volume, (3) instructing John Doe to forward calls to a third-party verification company, (4) maintaining ultimate discretion to determine

---

[1] The court has jurisdiction under 28 U.S.C. § 1331. Venue is proper in this district under 28 U.S.C. § 1391.

whether and when to accept customers, and (5) permitting John Doe to bind CNU in contract. (Dkt. 1 ¶¶ 51–56.)

CNU now moves to dismiss, arguing that although John Doe may have violated the TCPA, Karon has not plausibly alleged that CNU is directly or vicariously liable. To support its motion, CNU attaches a redacted agreement that purportedly governs CNU's relationship with its marketing affiliates, under which affiliates may not make robocalls or any outgoing calls. (Dkt. 20-1 § 2.5.) CNU also attaches a printout of its website in an attempt to show that the call could not have originated from an authorized CNU agent because CNU does not originate or broker loans of that size to Ohio residents. (Dkt. 20-2.) CNU also moves to strike Karon's class allegations.

After furnishing documents and permitting Karon to interview a CNU official, CNU argues that it proved definitively to Karon that it is not liable under the TCPA and that Karon therefore has no good-faith basis for prosecuting this action further. CNU therefore moves for sanctions. (Dkt. 30.) In response, Karon asks the court to deny or, in the alternative, strike CNU's motion for sanctions under Rule 12(f). (Dkt. 32 at 15.) He also seeks sanctions against CNU for filing what he argues is a frivolous motion for sanctions. (*Id.*)

## II.      Motion to Dismiss

### A.      Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011); *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *see also Johnson* v. *City of Shelby*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam) ("Federal pleading rules call for a short and plain statement of the claim showing the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

With limited exceptions, courts may consider only the complaint's four corners when deciding a 12(b)(6) motion. *Venture Assocs. Corp.* v. *Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). CNU asks the court to consider two documents outside the complaint, but neither is appropriate here. The redacted agreement between CNU and an unspecified lead provider (dkt. 20-1) is referenced "obliquely, if at all" in the complaint and is thus not properly before the court on this motion. *Elward* v. *Electrolux Home Prods., Inc.*, 264 F. Supp. 3d 877, 885–86 (N.D. Ill. 2017). The printed portions of CNU's website (dkt. 20-2) are outside the complaint altogether and inappropriate for judicial notice. *See Mussat* v. *Power Liens, LLC*, No. 13–cv–7853, 2014

WL 3610991, at *3 (N.D. Ill. July 21, 2014) (refusing to take judicial notice of website in TCPA action).

### B.    Direct Liability

The TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(c)(5). Karon alleges, and CNU does not contest, that John Doe called his cell phone without his prior consent using a prerecorded voice, which violated the TCPA. The parties disagree, however, on whether CNU is liable.

CNU is not directly liable. "Sellers," parties for whom third-party telemarketers place calls, are not directly liable for a call violating the TCPA unless the sellers themselves initiate the call. *In re Joint Petition of Dish Network, LLC*, 28 FCC Rcd. 6574, 6582–83 (2013); *see Blow* v. *Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017) (FCC rulings binding). Sellers initiate a call by either physically placing it or by so involving themselves with making the call that they essentially place it themselves. *Dish Network*, 28 FCC Rcd. at 6582–83; *Smith* v. *State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014). Karon alleges that John Doe placed the call, not CNU. He does not allege CNU's intimate involvement with the call. Karon argues that CNU is directly liable for all phone calls made in its name but ignores this governing standard from *Dish Network*. Because CNU did not initiate the call, Karon does not state a claim for direct liability against CNU.

### C.    Vicarious Liability

CNU may nonetheless be held vicariously liable if John Doe had authority under federal common law agency principles. *Dish Network*, 28 FCC Rcd. at 6586. Federal law follows the Restatement (Third) of Agency. *Opp* v. *Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000); *see also Toney*, 75 F. Supp. 3d at 742 & n.8. Under the Restatement, an agent's authority may be actual or apparent. Restatement (Third) of Agency §§ 2.01, 2.03 (2006).

To survive a motion to dismiss on an agency theory, Karon must plead facts that allow the court to infer that an agency relationship exists. *Whitley* v. *Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 895 (N.D. Ill. 2009). "Agency is typically a factual issue, with the plaintiff at the pleading stage only required to allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer* v. *Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016). But Karon must offer more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (alteration in original) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

"Agency is a 'fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" *Toney*, 75 F. Supp. 3d at 742 (quoting Restatement (Third) of Agency § 1.01). Because control is an essential feature of the principal/agent relationship, *see* Restatement (Third) of Agency § 1.01

cmt. f(1), Karon must plead facts supporting a plausible inference that CNU controlled John Doe to some degree. *See Toney*, 75 F. Supp. 3d at 744. Karon need not allege John Doe's identity, nor the fine details of John Doe's relationship with CNU, especially where such information is likely within CNU's and John Doe's exclusive knowledge. *Dish Network*, 28 FCC Rcd., at 6593 n.139; *Mauer*, 2016 WL 4651395, at *2 ("[A] plaintiff need not allege facts completely within the defendant's knowledge at the pleading stage."). In TCPA cases, courts often find an agency relationship when the caller offers to connect the customer directly to the seller. *See, e.g.*, *Mauer*, 2016 WL 4651395, at *3 (plaintiff left his contact information with caller and minutes later, seller called him directly using same script as original caller); *Toney*, 75 F. Supp. at 743 (caller provided seller's phone number); *Charvat* v. *Allstate Corp.*, 29 F. Supp. 3d 1147, 1150 (N.D. Ill. 2014) (caller transferred plaintiff directly to seller).

CNU first contends that the allegations all state legal conclusions, but they do not. Karon does not allege merely that "John Doe was CNU's agent," but adds detailed allegations about the nature and scope of CNU's control. According to the complaint, CNU told John Doe where to call, how often to call, and where to direct customers during the call. (Dkt. 1 ¶¶ 51–57.) These are factual predicates that plausibly support the legal conclusion that John Doe was CNU's agent, not themselves legal conclusions. Next, CNU argues that Karon alleges the agency relationship only "on information and belief." (Dkt. 1 at 1.) But Karon describes his "information and belief" to include counsel's reasonable investigation. That suffices at this stage. *See Vessal* v. *Alarm.com*, No. , 2017 WL 4682736, at *3 (N.D. Ill. Oct. 18, 2017) (denying motion to dismiss vicarious-liability TCPA claim made on information and belief).

Karon thus sufficiently alleges an agency relationship. John Doe called purporting to offer a loan from CNU. When Karon called John Doe back, "John Doe Corporation's phone representative . . . stated that Plaintiff was pre-approved for $3,000 and that Defendant [CNU] would be the lender." (*Id.* ¶ 31.) Karon thus not only received a call about CNU's services but when he called back, the John Doe representative continued not only to offer a CNU loan but to claim that CNU had pre-approved him for the loan. *Compare Toney*, 75 F. Supp. at 743 (holding plaintiff stated claim for vicarious liability where telemarketer mentioned seller again when plaintiff called back), *with Cunningham* v. *Health Plan Intermediaries Holdings, LLC*, No. 17-cv-1216, 2018 WL 835222, at *1, 5 (N.D. Ill. Feb. 13, 2018) (granting motion to dismiss where telemarketer used name that "[did] not connect to any Defendant").

Karon further alleges several facts showing CNU's interim or day-to-day control, hallmarks of a principal/agent relationship. (Dkt. 1 ¶¶ 50–54.) *See Toney*, 75 F. Supp. 3d at 742 (quoting Restatement (Third) of Agency §§ 1.01 cmt. f(1)). Karon alleges that CNU (1) limited the geographical areas to which John Doe could place calls, (2) restricted John Doe's contract and call volume, (3) instructed John Doe to forward calls to a third-party verification company, (4) maintained ultimate discretion to determine whether and when to accept customers, and (5) permitted John Doe to bind CNU in contract. (Dkt. 1 ¶¶ 51–56.) Taking these allegations together and construing them in the light most favorable to Karon, Karon has plausibly alleged that CNU exerted sufficient control over John Doe to create an agency relationship. *See, e.g.*, *Smith* v. *State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014) (holding vicarious liability adequately pleaded under similar circumstances).

4

Finally, CNU denies the allegations of the complaint, citing two of its own documents to assert that it neither authorizes its vendors to make robocalls nor offers $3,000 loans to Ohio residents. (Dkts. 20-1, 20-2.) This line of argument, and these documents, do not properly respond to a Rule 12(b)(6) motion, which challenges the sufficiency, not the merits, of the complaint. *See Desai* v. *ADT Sec. Servs., Inc.*, No. 11 C 1925, 2011 WL 2837435, at *1 (N.D. Ill. July 18, 2011) (denying motion to dismiss TCPA claim over defendant's "staunch[]" denial that it encouraged third parties to make calls on its behalf).

### III.     CNU's Motion to Strike

"Courts in this District . . . evaluate motions to strike class allegations under Rule 23, not Rule 12(f)." *Buonomo* v. *Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (collecting cases). Rule 23 directs courts to determine whether to certify a class "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). "Although most often it will not be practicable for the court to do that at the pleading stage, sometimes the complaint will make it clear that class certification is inappropriate." *Buonomo*, 301 F.R.D. at 295 (cleaned up).[2]

Karon alleges that an agent of CNU called him yet seeks to represent a class of plaintiffs including those whom CNU called directly. (Dkt. 1 ¶ 58.) "Rule 23(a)(3) requires a plaintiff to establish that 'the claims . . . of the representative parties are typical of the claims . . . of the class.'" *Buonomo*, 301 F.R.D. at 296 (quoting Fed. Civ. P. 23(a)(3)). A claim is not typical if it is not based on the same legal theory. *Id.* But whether, as alleged, CNU caused an agent to make calls or made them itself, either type of call violates TCPA. The court denies the motion to strike without prejudice to CNU's making an argument in opposition to a motion to certify the class that difference between the two groups would preclude Karon from representing the direct-call plaintiffs.

### III.     CNU's Motion for Sanctions

Because the complaint states a claim for relief, it is not so frivolous or poorly researched that it warrants sanctions.

CNU argues that even if the complaint is not itself sanctionable, Karon's counsel must now know that the allegations are false because before CNU filed its motion to dismiss, it provided some evidence to that effect. CNU sent Karon a heavily redacted contract stating that CNU prohibits its third-party marketing publishers from "autodialing or 'robo-calling'" or placing any outbound calls. (Dkt. 30-2 § 2.5.) CNU permitted Karon to interview its senior marketing manager, who indicated (but not under oath) that CNU does not use the phone number that called Karon or have any record of calling Karon. (Dkt. 30-3 ¶¶ 5–6.) She later provided Karon's counsel with a sworn declaration to similar effect. (Dkt. 30-3; dkt. 30-2 ¶ 6). CNU also cites some of its own webpages, one of which states that CNU does not originate loans in Ohio or broker loans to Ohio residents that exceed $2,400, (dkt. 20-2), and another of which warns customers of scammers. (Dkt. 30-2 ¶ 3.)

---

[2] The "(cleaned up)" parenthetical indicates that internal quotation marks, brackets, ellipses, citations, and footnote reference numbers have been changed from the source. *See* Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

This evidence will likely support CNU's theory that John Doe is a "phishing" scammer, pretending to sell CNU loans to convince unwary people to divulge their personal information. But while it might carry the day in a motion for summary judgment or as a trial defense, the evidence is not such ironclad proof that any reasonable plaintiff's counsel would withdraw the complaint after seeing it. The motion for sanctions is therefore denied.

**IV.     Karon's Motion to Strike and for Sanctions**

In his response to CNU's motion for sanctions, Karon asks the court either to deny the motion or, in the alternative, strike it under Rule 12(f). Because the motion for sanctions is denied, Karon's alternative relief is unnecessary, and the motion to strike is denied as moot.

Karon also requests sanctions against CNU for filing its own motion for sanctions. Although frivolous motions for sanctions are themselves sanctionable, *Alliance to End Repression* v. *City of Chicago*, 899 F.2d 582, 583 (7th Cir. 1990) (per curiam), CNU's motion was not frivolous. Were CNU's evidence incontrovertible, CNU would have a reasonable basis to seek sanctions. CNU's inaccurate assessment of the strength of its own pre-discovery disclosures is not sanctionable.

Date: July 16, 2019

_____

U.S. District Judge Joan H. Lefkow